IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA ANDERSON, | ) |
| Plaintiff, | ) Civil Action No. 10-4064 |
| v. | ) |
| AFNI, INC. | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF TARA ANDERSON'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Tara Anderson submits this memorandum of law in support of her motion for partial summary judgment. Plaintiff brought this consumer protection action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA" or "Act"), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA"), and common law of privacy. Plaintiff now seeks summary judgment as to her TCPA claim only. The TCPA is a strict liability statute that prohibits certain automated telephone calls. The Act provides for a $500 statutory damages award for each unlawful telephone call, which may be increased up to $1,500 for each call made in willful or knowing non-compliance of the Act. Because the facts establishing the TCPA violations are undisputed, and because the statutory damages are fixed and simple to calculate, Plaintiff believes that summary judgment should be entered in her favor as to her TCPA claim pursuant to Fed. R. Civ. P. 56.

**I.      INTRODUCTION**

Defendant AFNI, Inc. ("AFNI") purchases and collects consumer debts. Like any other corporate actor, AFNI has the right to bring a legal action in court, obtain a judgment in its favor,

1

and then seek to collect it. AFNI prefers to employ a self-help method of collection, without obtaining a judgment legally entitling it to collect a given debt. Thus AFNI duns consumers directly through letters and telephone calls. The process is almost entirely automated.

During the time period in question here, AFNI used "robo-dialers" (automated telephone dialing machines) to initiate millions of calls to consumers with the capacity to deliver artificial prerecorded voice messages. AFNI used these robo-dialers to initiate 76 such telephone calls to Plaintiff Tara Anderson from January through August 2010 in its attempts to collect certain Verizon New Jersey debts that it had acquired in default. Anderson, however, was not the debtor that AFNI sought. In fact, Anderson was a victim of identity theft at the hands of the supposed debtor. Even though Anderson advised AFNI several times that she was not the debtor, and that AFNI should stop calling her, the calls persisted for over eight months until Plaintiff brought this action. The robo-dialed calls were initiated with a device that could deliver, and which in fact delivered on many occasions, prerecorded artificial voice messages, which violated the TCPA. The facts of this case demonstrate that once the robo-dialers are put into action, AFNI's persistent and harassing unlawful calls do not stop, even when they are directed to non-debtors who are victims of identity theft, like Plaintiff. Of course, these calls *could have* stopped, as they did after Plaintiff brought this action.

## II.     UNDISPUTED STATEMENT OF FACTS

1.    Tara Anderson (née "Pack") has lived on Ingham Street in Pittsburgh, Pennsylvania since 2003. Deposition of Tara Anderson ("T. Anderson Dep."), 14:7-14. (True and correct copies of the pages from Plaintiff's deposition transcript cited herein are attached hereto as Exhibit A).

2. Plaintiff has a home telephone number with a "412" Pittsburgh area code, ending in "2345" (Plaintiff's "home number"). Ex. A, T. Anderson Dep., 20:16-19.

3. Plaintiff has never lived in or even visited New Jersey, and she was not responsible for the Verizon New Jersey telephone debts at issue in this case. *Id.*, 50:7-19; *see also* Deposition of Lisa Anderson ("L. Anderson Dep."), 67:1-10; and 103:16-104:15 (Lisa Anderson, testifying as an AFNI Rule 30(b)(6) witness, admitting that the Verizon New Jersey debts at issue in this case were owed by a Tara Sampson, not by Plaintiff). (True and correct copies of the pages from Lisa Anderson's deposition transcript cited herein are attached hereto as Exhibit B).

4. Plaintiff has been the victim of identity theft at the hands of a person named Tara Sampson. *See* Ex. C (Court of Common Pleas Criminal Complaint and Guilty Plea).

5. Sampson pled guilty to using and attempting to use Plaintiff's identity and served time in state prison for her actions. *Id.*; *see also* Ex. A, T. Anderson Dep., 11:12-21.

6. Plaintiff never agreed for AFNI to call her at home, or at any telephone number, and in fact advised AFNI that it had no permission to call her. *See* Ex. A, T. Anderson Dep., 37:17-38:13.

7. It is undisputed that Plaintiff does not owe the Verizon New Jersey debts at issue in this case that AFNI was attempting to collect from her. *See* Ex. D (ACDV Dispute of AFNI's Verizon Account listing it as a result of identity theft); Ex. B, L. Anderson Dep., 67:1-10; and 103:16-104:15.

8. In 2009, Plaintiff discovered an adverse AFNI collection account (collecting for Verizon New Jersey) reporting on her credit report. *See* Ex. D; *see also* Ex. A, T. Anderson Dep., 73:22-74:15.

9. Plaintiff disputed that account through the Experian credit reporting agency, which in turn contacted AFNI on August 17, 2009 in the form of a document called an "ACDV." Ex. D.

10. In the "ACDV" Experian advised AFNI that Plaintiff claimed that the subject collection account was not hers because of "true identity fraud, account fraudulently opened." *Id*.

11. In response, AFNI deleted that account from Plaintiff's credit report on August 18, 2009. *Id.*

12. That disputed AFNI account had Plaintiff's home number as the telephone number for the alleged "debtor," Tara Sampson. Ex. B, L. Anderson Dep., 62:21-64:1.

13. AFNI had obtained Plaintiff's home number through a LexisNexis "skip tracing" product while searching for the alleged debtor Tara Sampson. *Id.*, 86:9-14.

14. At the time it deleted the disputed collection account from Plaintiff's credit report in August 2009, AFNI did nothing to assure that it did not attempt to collect any Verizon New Jersey debt from Plaintiff by calling Plaintiff at her Pittsburgh home number, or to block Plaintiff's home number from any future calls. *Id.*, 63:4-64:1; and 119:1-20.

15. In January 2010, AFNI began placing a series of calls to Plaintiff's home number in an attempt to collect debts incurred by Tara Sampson with Verizon New Jersey. *Id.*, 70:3-8; and 103:16-104:15.

16. The calls were all placed to Plaintiff's home number using a robo-dialer which had the capacity to deliver to the recipient of the call a prerecorded artificial voice message. Deposition of Joe Wenslauskis ("Wenslauskis Dep."), 27:14-28:2; 73:18-74:17; and 62:11-63:3.

(True and correct copies of the pages from AFNI's Rule 30(b)(6) witness Joe Wenslauskis's deposition transcript cited herein are attached hereto as Exhibit E).

17. AFNI, through its agents, SoundBite and Livevox, places approximately 900,000 - 1,000,000 such calls every day in its attempt to collect debts from alleged debtors. *Id.*, 13:14-14:9.

18. The process works as follows: AFNI initiates a "daily file" request to one of its robo-dialer vendors that a set of accounts be collected. *Id.*, 16:2-23. The calls placed by the robo-dialers have the capacity to deliver a prerecorded artificial voice message every time it dials. *Id.*, 25:7-19. If the call goes unanswered, the prerecorded message has the capacity to be provided to the answering service of the consumer. *Id*. In the event the telephone call is answered, a prerecorded message plays offering the receiver multiple voice-prompted options. *Id*., 20:14-23:5.

19. From the time of the first telephone call to her home number in January 2010, Plaintiff immediately responded to the calls and spoke with AFNI's representatives who she informed that she was not Sampson, that nobody in her home owed the debts at issue, and that the calls must stop. Ex. A, T. Anderson Dep., 37:17-38:13.

20. AFNI's robo-dialer records reflect several calls longer in length on January 8, 11, 18, and 20. *See* Ex. F (AFNI's Robo-Dialer Records for Plaintiff's Home Number).

21. Plaintiff testified that she gave such a notice to AFNI on multiple occasions. Ex. A, T. Anderson Dep., 62:11-63:12.

22. Nevertheless, AFNI continued to initiate calls to Plaintiff's home number between January 8, 2010 and August 15, 2010, in which time period it "attempted" 76 such automated calls according to its own robo-dialer records. Ex. F.

5

23. According to AFNI, although 76 calls were "attempted" only 45 such calls were actually made. Ex. E, Wenslauskis Dep., 74:4-22; and 76:20-79:5.

24. Of all of the calls, AFNI's records show that 18 were answered by a person and the rest went to an answering machine or were not answered in any way. *Id.*, 76:20-79:5.

25. All of the "attempted" telephone calls had the capacity to deliver a prerecorded artificial automated message. *Id.*, 27:14-28:2; and 74:4-17.

26. Indeed, a prerecorded artificial automated message marks the beginning of *all* calls placed by AFNI through the robo-dialers. *Id.*, 25:7-19.

27. No person would speak to the consumer unless the consumer indicates to the robo-dialer by pressing a key on her telephone that she seeks to speak with a real person. *Id.*, 23:20-24:2.

28. Of the 18 calls that AFNI believes were answered by Plaintiff, the automated message began playing every time. *Id.*, 73:12-17.

29. After more than eight months of these calls from AFNI, and after numerous requests by Plaintiff to AFNI to stop calling her, Plaintiff brought this action, which finally prompted AFNI to put Plaintiff on its "do not call" list and put an end to the calls. Ex. B, L. Anderson Dep., 84:15-85:17.

## III. STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c)(2), a motion for summary judgment shall be granted if:

> The pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2) (revised as of Dec. 1, 2009). The Third Circuit has said that summary judgment shall be granted if the movant shows, by admissible evidence, that there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998); *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988), *cert. denied*, 488 U.S. 870 (1988). This is such a case with respect to Plaintiff's TCPA claim.

## IV.     ARGUMENT

### A.     Under The Plain Reading Of The TCPA, AFNI Violated The Act 76 Times

The TCPA permits a private right of action for each telephone call initiated to a consumer in violation of the Act. 47 U.S.C. § 227(b)(3). The Act provides $500 in statutory damages to the aggrieved consumer for "each such violation." 47 U.S.C. § 227(b)(3)(B). The TCPA further imposes liability of up to $1,500 for each unlawful telephone call if the court finds that a defendant knowingly or willfully violated of the Act. 47 U.S.C. § 227(b)(3).

The TCPA has been interpreted to be a strict liability statute. *CE Design Ltd. v. Prism Business Media, Inc.*, Civ. No. 07-5838, 2009 WL 2496568, at *3 (N.D. Ill. 2009) ("The TCPA is a *strict liability* statute, but the court has discretion to award treble damages for a willful or knowing violation of 47 U.S.C. 227(b)") (emphasis added); *see also Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (holding that liability under the TCPA does not require intent, except as to treble damages) (citing cases). Moreover, the "$500 figure is a mandatory fixed sum" for each unlawful telephone call. *See Fillichio v. M.R.S. Assoc., Inc.*, Civ. No. 09-61629, 2010 WL 4261442, at *5 (S.D. Fla. Oct. 19, 2010) (granting summary judgment

to consumer plaintiff against debt collector on TCPA claim involving 157 unlawful calls) (citing cases).[1]

Relevant to this case, the TCPA provides that:

> *It shall be unlawful* for any person within the United States, or any person outside of the United State if the recipient is within the United States . . . to *initiate* any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C. § 227(b)(1)(B) (emphasis added).

Here, the undisputed evidence shows that AFNI initiated 76 telephone calls to Plaintiff at her home number using its robo-dialers with the capacity to deliver prerecorded voice messages to the recipient of such calls. Undisputed Statement of Facts, ¶¶ 16 and 22. AFNI's own robo-dialer records show "76 attempts found." (*See* Ex. F). The evidence also shows that at no time did the Plaintiff consent to these phone calls, and in fact, Plaintiff made multiple attempts to inform AFNI that she was not the individual they were seeking to collect from and that she did not wish to receive further telephone calls. Undisputed Statement of Facts, ¶¶ 6, 19 and 21. AFNI admits that it obtained Plaintiff's telephone number through a third party skip-tracing service while searching for a person named Tara Sampson, further evidence that Plaintiff did not give any consent for the calls. *Id.* at ¶ 13.

---

[1] The TCPA is designed to protect the privacy interests of consumers by prohibiting vexatious and intrusive robo-dialed commercial telephone calls from interrupting the privacy of consumers in their own homes. The privacy interests protected by the TCPA have been summarized as follows:

> the shrill and imperious ring of the telephone demands immediate attention. Unlike the unsolicited bulk mail advertisement found in the mail collected at a resident's leisure, the ring of the telephone mandates a prompt response, interrupting a meal, a restful soak in the bathtub, even intruding on the intimacy of the bedroom.

*State of Minnesota v. Casino Marketing Group, Inc.*, 491 N.W.2d 882, 888 (Minn. 1992) (*cert denied* 507 U.S. 1006 (1993)).

Defendant may argue that only 45 of those telephone calls were actually made and that only 18 were answered.  But that is of no moment.  The TCPA specifically used the term "initiate" in proscribing unlawful telephone calls.   The TCPA does not define "initiate."  Thus, "terms that are not statutorily defined are usually ascribed their 'ordinary or natural meaning.' " *Lozano v. City of Hazleton*, 620 F.3d 170, 208 (3d Cir. 2010) (*citing Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 476 (1994)).  The common usage of the term initiate, according to Merriam-Webster's Dictionary, is "to cause or facilitate the beginning."  Unabridged, 2010.  The TCPA does not require that a call be "placed" or "received" or "heard" to fall under its purview, requirements that Congress could have easily and explicitly imposed if it so intended.  The record here is undisputed that AFNI began the process of placing robo-calls to Plaintiff with the capacity and intent to deliver prerecorded artificial messages 76 times.  *See* Undisputed Statement of Facts, ¶¶ 22 and 23; Ex. F.

Minimally, this Court must find 45 violations of the Act, for there can be no doubt that AFNI's robo-dialers, with the capacity to deliver a prerecorded artificial message, actually called Plaintiff's home 45 times:

> 10   Q.   And these are 45 tries where Afni would
> 11   have been able to deliver a prerecorded automated
> 12   message had the person actually picked up the
> 13   telephone, correct?
> 14      A.   Had a live person picked up the phone,
> 15   they would have had the ability to get a message,
> 16   right.
> 17      Q.   Okay.  And these are calls by Afni,
> 18   these 45 tries are actual calls?
> 19      A.   They're actual calls, correct.

*See* Ex. E, Wenslauskis Dep., 77:10-19.

Plaintiff is thus entitled to judgment in her favor for her TCPA claim and statutory damages of $38,000 for 76 unlawful telephone calls, or minimally $22,500 for 45 unlawful telephone calls, initiated by AFNI to her home phone.

### B.     Plaintiff Is Entitled To Treble Damages Under The Circumstances Here

"If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, at its discretion, increase the amount of the award to an amount equal to no more than 3 times the amount available under subparagraph (B) of this paragraph."  47 U.S.C. § 227(b)(3).  The term *willful* within the TCPA "when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter or by a treaty ratified by the United States."  47 U.S.C. § 312(f)(1).[2]

Here, this Court should find willful violations and award treble damages of $1,500 for each unlawful call after January 20, 2010.  The undisputed record shows that Plaintiff advised AFNI in response to the early calls it placed to her in January 2010 that she was not the debtor and that they were calling the wrong person and should stop calling.  *See* Undisputed Statement of Facts, ¶¶ 6, 19 and 21.  AFNI's robo-dialer records show calls lasting 44 seconds, 44 seconds, 26 seconds and 257 seconds between January 8 and January 20, 2010.  *Id.* at ¶ 20 and Ex. F.  Subsequent calls were shorter.  *Id.*  Thus, these records corroborate the assertion that Plaintiff

---

[2]     Courts construing the TCPA have applied this definition of "willful" found later within Chapter 5, Title 47, of the federal communications acts, relating to wire and radio communications, since the definition indicates that it applies to "any provision *of this chapter* or any rule or regulation of the Commission authorized *by this chapter*." *Sengenberger v. Credit Control Services, Inc.*, Civ. No. 09-2796, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010) (awarding treble damages for willul violations); *see also Pricom Asphalt Sealcoating, Inc. v. Furnas*, Civ. No. 08-2854, 2009 WL 1655031, at *1 (Ohio App. 11th Dist. June 12, 2009); *A Fast Sign Co., Inc. v. Amer. Home Servs., Inc.*, Civ. No. 03-77276 (Ga. Super. Ct., Fulton Cty. Mar. 25, 2010).  Similarly, the FCC has found that a willful violation of the TCPA is one where the "violator knew that he was doing the act in question . . . [and that the] violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense . . . ." *In re Dynasty Mortg., LLC*, 22 F.C.C. Rcd. 9453, 9470 n.86 (2007).

10

spoke with AFNI's agents between January 8 and January 20, 2010, warning them that AFNI was calling the wrong person.

Moreover, approximately four months prior to even the first telephone call, Plaintiff had disputed the accuracy of an AFNI collection account for a Verizon New Jersey account with AFNI through the Experian credit reporting agency, specifically advising AFNI that the account had been opened as a result of identity theft and did not belong to her. *Id.* at ¶¶ 7 and 9-11.

Given this ample notice to AFNI that it was calling the wrong person and also the fact that AFNI was unwilling to stop the calls for eight months, until the point that Plaintiff filed this lawsuit, this Court should find willful violations here.  AFNI's conduct was voluntary and deliberate.  Thus, this Court should award Plaintiff $1,500 for each of the 72 robo-dialer calls initiated by AFNI to Plaintiff after January 20, 2010 and $500 for the first four calls (for a total judgment in Plaintiff's favor of $110,000); or minimally $1,500 for the 41 actually placed robo-dialer calls after January 20, 2010 and $500 for the first four calls (for a total judgment in Plaintiff's favor of $63,500).

        **C.     FCC Regulations Do Not Provide A Defense To AFNI In This Case, Involving Telephone Calls To A Non-Debtor**

Certain automated calls may be exempted from the TCPA's coverage by FCC rule or order.  47 U.S.C. § 227(b)(1)(B).  Since the TCPA was signed into law in 1991, the FCC has created an exemption for calls placed to an individual who has an "established business relationship" with the caller.  7 F.C.C. Rcd. 8752 (1992).  This regulatory exemption has been further elaborated by the FCC to include calls placed to collect a debt, when a prior business relationship existed.  *Id.* at 8771-8773.  This exception is of no help to ANFI here, however, because Plaintiff has no established business relationship with AFNI, and never had any business relationship with AFNI of any kind.  Undisputed Statement of Facts, ¶¶ 3, 7 and 13.

11

This business relationship exemption established by the FCC has been found not to apply when a debt collector places calls to a non-debtor. *Watson v. NCO*, 462 F. Supp. 2d 641 (E.D. Pa. 2006). In *Watson*, the Eastern District of Pennsylvania, per Judge Davis, found that there can exist no established business relationship between a non-debtor and a collection agency which is calling the non-debtor in error. *Id.* at 644 ("Since an erroneously called non-debtor has no such existing business relationship, it follows that the purview of the FCC's exemption does not extend to the type of calls made in this case"). Thus, even if the FCC was acting within its authority in carving out an exemption for debt collectors, the exception cannot apply here because Plaintiff is not a debtor and thus had no prior business relationship with AFNI.

## V.     CONCLUSION

Therefore, for all of the foregoing reasons, Plaintiff is entitled to summary judgment on her TCPA claim.

**FRANCIS & MAILMAN, P.C.**


BY:     */s/ Erin A. Novak*
       JOHN SOUMILAS
       ERIN A. NOVAK
       Attorneys for Plaintiff
       Land Title Building, 19th Floor
       100 South Broad Street
       Philadelphia, PA 19110
       (215) 735-8600

Dated: January 7, 2011