IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TARA ANDERSON                    :              CIVIL ACTION
                                 :
        v.                       :
                                 :
AFNI, INC.                       :              NO. 10-4064

MEMORANDUM

Dalzell, J.                                     May 11, 2011

        Plaintiff Tara Anderson sues defendant AFNI, Inc.

("AFNI") for violations of the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §§ 1692, et seq., and the Pennsylvania

common law of privacy.  On January 7, 2011, Anderson filed a

motion for partial summary judgment and on the same day AFNI

filed its motion for summary judgment.  Anderson's motion claims

that she is entitled to summary judgment on her TCPA claim, while

AFNI's motion seeks summary judgment on all three of Anderson's

claims.  For the reasons set forth below, we will deny Anderson's

motion for partial summary judgment, grant AFNI's motion for

summary judgment as to the federal claims, and dismiss the

remainder of the case.


I.   **Factual Background**

        Under Fed. R. Civ. P. 56(a), "[t]he court shall grant

summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law," where "[a] party asserting that there is a genuine dispute as to a material fact must support that assertion with specific citations to the record." Bello v. Romeo, 2011 WL 1519389, at *3 (3d Cir. 2011) (citing Rule 56(c)). We will thus begin by reciting the undisputed facts in this matter, and then consider the disputed facts that the parties have supported with their specific citations to the record.

The parties do not dispute that Tara Anderson was the victim of identity theft at the hands of Tara Sampson, who pled guilty to that offense and served time in state prison for her actions. Pl.'s Partial Mot. Summ. J. ("Pl.'s MSJ") ¶¶ 4-5. Between 2007 and 2010, AFNI purchased six delinquent Verizon accounts in Tara Sampson's name; the account numbers for these accounts ended in 69, 56, 92, 14, 70, and 88. Def.'s Mot. Summ. J. ("Def.'s MSJ") ¶ 1; Pl.'s Resp. to Def.'s Mot. Summ. J. ("Pl.'s Resp.") ¶ 1. Anderson was not responsible for the debts associated with those accounts, and never gave permission to AFNI to call her at her home telephone number -- a number with the area code "412" and ending in "2345" ("the 412 number") -- or at any other number. Pl.'s MSJ ¶¶ 2, 3, 6.

AFNI acquired Account 69 on October 19, 2007 and Account 56 on May 23, 2009, and made no attempt thereafter to collect on either account. Def.'s MSJ ¶¶ 2-3; Pl.'s Resp. ¶¶ 2-3. AFNI did report Account 56 to credit reporting agencies, however, one of which placed the account tradeline on Anderson's credit profile. Def.'s MSJ ¶ 4; Pl.'s Resp. ¶ 4. In 2009, Anderson discovered this account on her credit report, and disputed it through the credit reporting agency. Pl.'s MSJ ¶ 8-9. In August of 2009, AFNI received a Consumer Dispute Verification ("CDV") Form from the credit reporting agency which stated that Anderson "[c]laims true identity fraud, account fraudulently opened. Provide or confirm complete ID." Def.'s MSJ ¶ 5; Pl.'s Resp. ¶ 5. AFNI requested that the credit reporting agency delete the tradeline from Anderson's credit profile, and on August 19, 2009, AFNI closed Account 56.[1] Def.'s MSJ ¶¶ 6-7; Pl.'s Resp. ¶¶ 6-7.

AFNI purchased Account 92 on July 22, 2009 and engaged skip tracing services to find contact information for Sampson, which yielded the 412 number. Def.'s MSJ ¶ 8; Pl.'s Resp. ¶ 8.

---

[1] AFNI had closed Account 69 on June 1, 2010. Def.'s MSJ ¶ 2; Pl.'s Resp. ¶ 2. Neither AFNI nor Anderson offers an explanation as to why AFNI closed this account.

A collection call placed to this number on January 20, 2010

reached Anderson, who informed an AFNI representative that the

number did not belong to Sampson and should be removed from

Account 92 -- a request with which AFNI immediately complied.

Def.'s MSJ ¶¶ 9-10; Pl.'s Resp. ¶¶ 9-10.

On April 19, 2010, AFNI purchased Account 14 and then

bought Accounts 70 and 88 on June 28, 2010. Def.'s MSJ ¶¶ 13,

15, 17; Pl.'s Resp. ¶¶ 13, 15, 17. With respect to each account,

AFNI once again engaged skip tracing services to locate Sampson,

and these services once again produced the 412 number. Id. AFNI

attempted to contact Sampson to collect on these accounts between

April and August of 2010, with some of its attempts made to the

412 number, and though Anderson answered some of these calls

after January of 2010, she never informed AFNI that it was

calling the wrong number in its efforts to reach Sampson. Def.'s

MSJ ¶¶ 14, 16, 18, 19; Pl.'s Resp. ¶¶ 14, 16, 18, 19.

From January through August 2010, AFNI placed forty-

five calls to the 412 number: twenty-five calls regarding Account

14, eleven calls for Account 70, five calls for Account 88, and

four calls for Account 92. Def.'s MSJ ¶ 19; Pl.'s Resp. ¶ 19.

Anderson answered eighteen of these calls. Id. AFNI used a

telephone vendor, SoundBite, to place collection calls to the 412

4

number, and this system was designed to play an automated message under certain circumstances.  Def.'s MSJ ¶¶ 25-26; Pl.'s Resp. ¶¶ 25-26.  This message identified the person whom AFNI was attempting to contact and listed a series of options that the call recipient could choose, including pressing a number if the telephone number called did not correspond to the person AFNI was attempting to reach.  Def.'s MSJ ¶ 27; Pl.'s Resp. ¶ 27.

At all times, AFNI attempted only to collect debts Sampson owed, and Anderson at no time believed that she owed the debts that AFNI sought to collect.  Def.'s MSJ ¶¶ 23-24; Pl.'s Resp. ¶¶ 23-24.  Moreover, though the 412 number is indeed Anderson's home phone number, Pl.'s MSJ ¶ 2, she is not the legal subscriber for the number; her husband, Philip Anderson, is. Def.'s Suppl. in Supp. of Mot. Summ. J. ("Def.'s MSJ Suppl."); Pl.'s Resp. at 21.  AFNI made no calls to any cellular number associated with Anderson.  Def.'s MSJ ¶ 30; Pl.'s Resp. ¶ 30.

Finally, the parties agree that AFNI has in place policies regarding telephone numbers that AFNI learns are not associated with the entity it is attempting to contact: such policies direct account representatives to remove the numbers from each account in AFNI's possession in which they appear, and to make a notation to those accounts that the specified numbers

5

are incorrect. Def.'s MSJ ¶¶ 33-35, 37-38; Pl.'s Resp. ¶¶ 33-35, 37-38. AFNI also maintains a "universal Do Not Call List" of telephone numbers to which calls are never placed. Def.'s MSJ ¶ 39; Pl.'s Resp. ¶ 39. AFNI placed the 412 number on its "Do Not Call" list after Anderson brought this action. Pl.'s MSJ ¶ 29.

While these are the undisputed facts, the parties disagree on a number of other points, including (1) the number of calls AFNI initiated to Anderson; (2) whether all calls AFNI placed to Anderson had the potential to deliver an automated message; and (3) whether the debts of Sampson that AFNI sought to collect arose from personal, family, or household purposes.

Regarding the number of calls AFNI initiated to the 412 number, Anderson alleges that AFNI places debt collection calls through its agents Soundbite and Livevox, and that each day AFNI "initiates a 'daily file' request to one of its robo-dialer vendors that a set of accounts be collected." Pl.'s MSJ ¶¶ 17-18 (citing Dep. of Joe Wenslauskis, Ex. E to Pl.'s MSJ at 13-14, 16). Anderson asserts that between January 8, 2010 and August 15, 2010, AFNI "attempted" seventy-six such calls to the 412 number, id. ¶ 22 (citing AFNI's Records, Ex. F to Pl.'s MSJ), arguing that it "is undisputed that AFNI began the process of placing robo-calls to Plaintiff . . . 76 times." Id. at 9.

AFNI concedes that "[t]he SoundBite report indicates that there are 76 instances of that phone number showing up in the SoundBite data base," Def.'s Resp. to Pl.'s MSJ ("Def.'s Resp.") at 6 (citing Dep. of Joe Wenslauskis, Ex. 12 to Def.'s MSJ at 64). However, AFNI avers that "[t]he record clearly shows that AFNI did not initiate a call with each one of the entries," and that "[o]f those 76 instances, only 45 calls were made." Id. (emphasis omitted) (citing Ex. 12 to Def.'s MSJ at 57, 65).

As for the capacity of AFNI's calls to deliver an automated message, Anderson claims that "[e]very call placed by SoundBite on AFNI's behalf has the potential to deliver an automated, prerecorded message, whether answered by a person or connected to a voicemail or answering service." Pl.'s Resp. ¶ 26 (citing Dep. of Joe Wenslauskis, Ex. L to Pl.'s Resp. at 27). AFNI responds that "[t]he SoundBite system, as configured by AFNI, is not designed to play an automated message for any received call other than a call answered by a live person." Def.'s MSJ ¶ 26 (citing Ex. 12 to Def.'s MSJ at 68).

Regarding the nature of Sampson's debts, AFNI asserts that "[t]here is no evidence that the underlying credit transactions that created the obligations which became Accounts 14, 77 and 88 were for personal, family or household purposes."

Id. ¶ 21 (citing Dep. of Tara Anderson, Ex. 10 to Def.'s MSJ at 26-28). Anderson disagrees, arguing that: (1) AFNI sought to collect the debts in question from Tara Sampson, not any company or corporation, Pl.'s Resp. ¶ 21 (citing Dep. of Lisa Anderson, Ex. C to Pl.'s Resp. at 70); (2) the addresses found in AFNI's collection notes are residential addresses, id. (citing AFNI's Collection Notes, Ex. H to Pl.'s Resp at 3-4); (3) AFNI sent a debt collection letter to Anderson's residential address which was addressed to an individual, not a business, and included the verbatim warning the FDCPA requires for consumer debts, id. (citing AFNI's Collection Letter, Ex. J to Pl.'s Resp.); and (4) the debt associated with Account 56 was placed on Anderson's personal credit report, not any business credit report. Id. (citing Consumer Dispute Verification, Ex. A to Pl.'s Resp.).

## II. **Analysis**

On a motion for summary judgment, "[t]he moving party bears the initial burden of showing that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 Fed. Appx. 315, 318 (3d Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). If the moving party meets its burden, "the

non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial," id. (citing Celotex, 477 U.S. at 324). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. . . . The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986) (cited in Sheddy Family Trust ex rel. Sheddy v. Piatt Twp., 404 Fed. Appx. 629, 631 (3d Cir. 2010)). Of course, we "must draw all reasonable inferences in favor of the nonmoving party, and [we] may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (cited in Eisenberry v. Shaw Bros., 2011 WL 1226881, at *1 (3d Cir. 2011)).

In evaluating Anderson's motion for partial summary judgment, then, the case law requires that we draw different inferences than we would in considering AFNI's motion for summary judgment. Because we can rule on both Anderson's motion -- which solely concerns her claim under the TCPA -- and AFNI's motion with respect to the TCPA on the basis of the undisputed facts, we will not draw any factual inferences in our TCPA analysis. In

examining the remainder of AFNI's motion for summary judgment, we
will draw all reasonable inferences in favor of Anderson as the
nonmoving party.

**A.   <u>Anderson's Claim under the TCPA</u>**

As our Court of Appeals has observed, the Telephone
Consumer Protection Act was "[e]nacted in 1991 as part of the
Federal Communications Act" to "deal with an increasingly common
nuisance -- telemarketing." <u>ErieNet, Inc. v. Velocity Net, Inc.</u>,
156 F.3d 513, 514 (3d Cir. 1998).  The TCPA provides that

> It shall be unlawful for any person within the United
> States, or any person outside the United States if the
> recipient is within the United States --
>
> (A)  to make any call (other than a call made for
>      emergency purposes or made with the prior express
>      consent of the called party) using any automatic
>      telephone dialing system or an artificial or
>      prerecorded voice --
>
>      . . .
>
>      (iii)  to any telephone number assigned to a
>      paging service, cellular telephone service,
>      specialized mobile radio service, or other
>      radio common carrier service, or any service
>      for which the called party is charged for the
>      call;
>
> (B)  to initiate any telephone call to any residential
>      telephone line using an artificial or prerecorded
>      voice to deliver a message without the prior
>      express consent of the called party, unless the
>      call is initiated for emergency purposes or is

10

exempted by rule or order by the [Federal
Communications Commission, "FCC"] under paragraph
(2)(B).

47 U.S.C. § 227(b)(1)(A)-(B).  Under § 227(d)(1)(A), it is also

unlawful for any person within the United
States . . . to initiate any communication
using a telephone facsimile machine, or to
make any telephone call using any automatic
telephone dialing system, that does not
comply with the technical and procedural
standards prescribed under this subsection,
or to use any telephone facsimile machine or
automatic telephone dialing system in a
manner that does not comply with such
standards.

Under the TCPA, plaintiffs may bring "an action to

recover for actual monetary loss from such a violation, or to

receive $500 in damages for each such violation, whichever is

greater."  § 227(b)(3)(B).  "If the court finds that the

defendant willfully or knowingly violated this subsection or the

regulations prescribed under this subsection, the court may, in

its discretion, increase the amount of the award to an amount

equal to not more than 3 times the amount available under

subparagraph B of this paragraph."  § 227(b)(3).

Anderson asserts three claims under the TCPA, arguing

that AFNI violated §§ 227(b)(1)(A)(iii), (b)(1)(B), and (d)(1)(A)

by (1) "initiating telephone calls to Plaintiff's cellular

telephone using artificial or prerecorded voices to deliver

11

messages without Plaintiff's consent," Pl.'s Compl. ¶ 32; (2)

"initiating telephone calls to Plaintiff's residential telephone

line using artificial or prerecorded voices to deliver messages

without Plaintiff's consent," id.; and (3) "initiating telephone

calls to Plaintiff using an automated telephone dialing system

that was not in compliance with the technical and procedural

standards prescribed by the TCPA." Id.

Anderson asserts that she is entitled to summary

judgment on her TCPA claims because "the undisputed evidence

shows that AFNI initiated 76 telephone calls to Plaintiff at her

home number using its robo-dialers with the capacity to deliver

prerecorded voice messages to the recipient of such calls," and

"[t]he evidence also shows that at no time did the Plaintiff

consent to these phone calls." Pl.'s MSJ at 8. Anderson further

urges that "this Court should find willful violations and award

treble damages of $1,500 for each unlawful call after January 20,

2010," for a total judgment of $110,000. Id. at 10, 11.

AFNI claims that it is entitled to summary judgment on

Anderson's TCPA claims for three reasons[2]: (1) "Plaintiff cannot

_____

        [2] AFNI also argues that, if we find that it is not
entitled to summary judgment on Anderson's TCPA claims, it is
nonetheless true that Anderson "is only entitled to seek
                                        (continued...)

12

show that she has standing to bring a claim under the TCPA,"
Def.'s MSJ at 28; (2) "AFNI's telephone calls placed to [the 412
number] are exempt under 47 C.F.R. § 64.1200(a)(2)(iii)," id. at
31, since the calls were "neither an unsolicited advertisement or
[sic] a telephone solicitation," id. at 30; (3) Anderson's claim
is foreclosed by the FCC's "express exemption for calls made to a
party with whom the caller has an established business
relationship," id. at 32 (citing 47 C.F.R. § 64.1200(a)(2)(iv)),
and the FCC's finding that "'all debt collection circumstances
involve a prior or existing business relationship,'" id. (quoting
7 FCC Rcd. 8752, 8771-72 (1992)); and (4) AFNI "is not using an
'automatic telephone dialing system' as defined by the TCPA."
Id. at 35.

## 1. Anderson's Standing Under The TCPA

We will first consider whether Anderson has standing to
bring her TCPA claims. As our Court of Appeals has noted, "[t]he
doctrine of standing incorporates both a constitutional element

---

2(...continued)
compensation for . . . eighteen (18) calls under the TCPA,"
Def.'s MSJ at 36, and that treble damages are not warranted
because "AFNI did not knowingly or willfully violate the TCPA."
Id. at 37. Because we will grant summary judgment to AFNI on the
TCPA claims, we need not reach these contentions.

and a non-constitutional, 'prudential' element." <u>Joint Stock</u>

<u>Soc'y v. UDV N. Am., Inc.</u>, 266 F.3d 164, 174-75 (3d Cir. 2001).

A court should also consider whether a plaintiff bringing suit

under an Act of Congress has statutory standing, or "whether

Congress has accorded <u>this</u> injured plaintiff the right to sue the

defendant to redress his injury." <u>Graden v. Conexant Sys., Inc.</u>,

496 F.3d 291, 295 (3d Cir. 2007) (emphasis in original).

    "Constitutional standing is a threshold issue that we

should address before examining issues of prudential standing and

statutory interpretation." <u>Joint Stock Soc'y</u>, 266 F.3d at 175.

As the Supreme Court explained in <u>Lujan v. Defenders of Wildlife</u>,

504 U.S. 555, 560-61 (1992) (internal citations, quotation marks,

brackets, and ellipses omitted):

> [T]he irreducible constitutional minimum of
> standing contains three elements.  First, the
> plaintiff must have suffered an "injury in
> fact" -- an invasion of a legally protected
> interest which is (a) concrete and
> particularized, and (b) actual or imminent,
> not "conjectural" or "hypothetical."  Second,
> there must be a causal connection between the
> injury and the conduct complained of -- the
> injury has to be fairly traceable to the
> challenged action of the defendant, and not
> the result of the independent action of some
> third party not before the court.  Third, it
> must be "likely," as opposed to merely
> "speculative," that the injury will be
> redressed by a favorable decision.

We are satisfied that Anderson has constitutional standing in this case.  She has demonstrated an injury in fact -- the receipt of nearly fifty calls to her residential telephone number over eight months from an apparently implacable automated caller. AFNI caused this injury by initiating these calls and the injury Anderson suffered would be redressed by the award of damages.

As for prudential standing, our Court of Appeals explained its requirements in Freeman v. Corzine, 629 F.3d 146, 154 (3d Cir. 2010) (quotation marks and brackets omitted):

> Prudential standing requires that (1) a litigant assert his or her own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based.

Anderson sues here to vindicate her own legal interests, she asserts a specific grievance against AFNI, and her interests in avoiding harassment via the telephone line installed in her home are not "so marginally related to or inconsistent with the purposes implicit in the statute" that they fail to fall within the TCPA's zone of interests.  Clarke v. Securities Industry

<u>Ass'n</u>, 479 U.S. 388, 399 (1987).  We thus find that she has

prudential standing.

The crux of the parties' disagreement over standing

concerns its statutory component.  To determine whether a

plaintiff has statutory standing, "we employ the usual tools of

statutory interpretation.  We look first at the text of the

statute and then, if ambiguous, to other indicia of congressional

intent such as the legislative history."  <u>Graden</u>, 496 F.3d at

295.  Anderson suggests that "the TCPA permits a private cause of

action for any 'person,'" Pl.'s Resp. at 22, while AFNI responds

that "it is only the telephone subscriber who has standing to

bring an action for statutory damages under the TCPA according to

the legislative history and references to residential telephone

subscribers in the text of the TCPA and subsequent regulations,"

Def.'s MSJ at 27, and that "an unintended recipient of a

telephone call lacks standing to bring suit under the TCPA."  <u>Id.</u>

Under 47 U.S.C. § 227(b)(3),

A person or entity may, if otherwise permitted by the
laws or rules of court of a State, bring in an
appropriate court of that State --

    (A)  an action based on a violation of this
         subsection or the regulations prescribed
         under this subsection to enjoin such
         violation,

16

(B)  an action to recover for actual monetary
             loss from such a violation, or to
             receive $500 in damages for each such
             violation, whichever is greater, or

        (C)  both such actions.

The plain text of this provision suggests that Congress did not

mean to circumscribe standing beyond its constitutional and

prudential requirements, since it unambiguously grants a cause of

action to any "person or entity."

        AFNI argues in favor of a more restricted grant of

standing, citing Kopff v. World Research Group, LLC, 568 F. Supp.

2d 39 (D.D.C. 2008), Leyse v. Bank of America, Nat'l Assoc., 2010

WL 2382400 (S.D.N.Y. 2010), and Cellco P'ship v. Dealers

Warranty, LLC, 2010 WL 3946713 (D.N.J. 2010).  In Leyse, Judge

Koeltl held that "an unintended and incidental recipient of the

call" is "not a 'called party' within the meaning of §

227(b)(1)(B)," 2010 WL 2382400, at *4, and hence "lacks standing

to seek statutory damages," id. at *6, since "[t]o find otherwise

would mean that when a business calls a person with a prerecorded

message, that business could be liable to any individual who

answers the phone despite the fact that the business only

intended to call one person."  Id. at *5.  The Court in Kopff

similarly concluded that "where there is a specific, existing

addressee . . . the Court is persuaded that the TCPA cause of

action is his, and not his staff's."  568 F.Supp.2d at 42.  And

in Cellco Judge Wolfson concluded that since

> § 227(b)(1)(A)(iii) provides an exception for
> calls made for emergency purposes or made
> with the prior express consent of the called
> party. . . . the only logical reading of §
> 227(b)(1)(A)(iii) is one that would require
> the party asserting the claim to be the party
> to whom the call is directed.  Any other
> reading, would render the exception for calls
> 'made with the prior express consent of the
> called party' a nullity.

2010 WL 3946713, at *9.  Judge Wolfson thus determined that "it

is the intended recipient of the call that has standing to bring

an action for a violation of § 227(b)(1)(A)(iii)."  Id. at *10.

We respectfully disagree with these holdings.  If we

assume that the term "called party" is synonymous with "intended

recipient" (and does not refer to the person who received the

call and hence was "called"), we nonetheless do not believe that

granting standing to persons other than "called parties" does any

violence to the statute itself or to its application in practice.

After all, the exception for calls "made with the prior express

consent of the called party" can operate to protect a defendant

from liability even if someone other than the "called party"

seeks to bring suit.  Here, for instance, AFNI could conceivably

claim that it had the prior express consent of Sampson even
though it is Anderson who brings this case. Moreover, the
concern that seems to underlie the holdings in the <u>Leyse</u> line of
cases -- that unless standing is restricted to "called parties" a
chance recipient of a call made to a phone line in which one has
no personal interest could bring suit under the TCPA -- could
likely be addressed through the requirements of constitutional
standing, under which such a chance recipient would likely not be
able to demonstrate injury in fact, and prudential standing,
under which such a fortuitous callee would probably fall outside
the TCPA's zone of interests.

Moreover, if the <u>Leyse</u>, <u>Kopff</u>, and <u>Cellco</u> decisions
succeed in addressing two problems -- the imposition of liability
upon a defendant notwithstanding the procurement of consent from
the intended recipient of a call, and the bringing of a suit by
the chance recipient of a call -- their holdings generate other
difficulties. In cases such as this one -- where the intended
recipient of the defendant's calls did not express consent to
receiving those calls[3] but the defendant accidentally called a
third party -- it would appear under <u>Leyse</u>, <u>Kopff</u>, and <u>Cellco</u>

---

[3] AFNI has neither alleged nor adduced any evidence
that shows it secured Sampson's consent to its calls.

19

that no person would have a cause of action, no matter how frequently or for how long such calls continued.  Moreover, under the <u>Leyse</u> line of cases, a plaintiff would have to prove that the defendant intended to call the plaintiff just to demonstrate standing.  Such a question seems poorly suited to a threshold inquiry.

The fundamental point is that § 227(b)(3) unambiguously grants standing to any "person or entity," and this grant does not contradict the rest of the statute.  Consequently, we need not consider whether extending standing beyond "called parties" is workable in practice, and we certainly need not investigate whether the legislative history of the TCPA supports restricting standing only to "telephone subscribers," as AFNI urges.  The TCPA makes plain that the only limitations on standing under the statute are those imposed by constitutional and prudential requirements.  Because Anderson has met these requirements, she has standing to assert her TCPA claims.

## 2. <u>Anderson's Claims Under § 227(b)(1)(A) & (d)(1)(A)</u>

We will next examine Anderson's claims under 47 U.S.C. § 227(b)(1)(A)(iii), which proscribes the making of calls to telephone numbers assigned to cellular telephone services using

20

automatic telephone dialing systems or artificial or prerecorded voices, and § 227(d)(1)(A), which requires telephone calls made using any automatic telephone dialing system to comply with certain technical and procedural standards. AFNI does not specifically seek summary judgment with respect to the first claim, and the parties agree that AFNI made no calls to a cellular telephone associated with Anderson. Def.'s MSJ ¶ 30; Pl.'s Resp. ¶ 30. We will consequently dismiss Anderson's claim under § 227(b)(1)(A)(iii).

As for § 227(d)(1)(A), Anderson avers that "[a]lthough the phrase 'automatic telephone dialing system' is defined in the TCPA and used as an element for certain other types of unlawful calls, it is simply not an element of Plaintiff's claim here." Pl.'s Resp. at 28 (emphasis in original). Though this statement plainly contradicts Paragraph 32(c) of Anderson's complaint, we will take it to mean that she has abandoned her claim under § 227(d)(1)(A), and will grant AFNI's summary judgment motion with respect to this claim.

### 3. Anderson's Claim under § 227(b)(1)(B)

We are left under the TCPA only with Anderson's claim as to § 227(b)(1)(B), to which AFNI has counterposed its second

21

and third arguments regarding exemptions under the TCPA.  As we

have already pointed out, § 227(b)(1)(B) does not extend to calls

"exempted by rule of order by the Commission under paragraph

(2)(B)."  Section 227(b)(2)(B) permits the FCC to

>           by rule or order, exempt from the requirements of
>           paragraph (1)(B) of this subsection, subject to
>           such conditions as the Commission may prescribe --
>
>           (i)  calls that are not made for a commercial
>                purpose; and
>
>           (ii) such classes or categories of calls made
>                for commercial purposes as the
>                Commission determines --
>
>           (I)  will not adversely affect the privacy
>                rights that this section is intended to
>                protect; and
>
>           (II) do not include the transmission of any
>                unsolicited advertisement.

In 1992, the Commission promulgated rules exempting

from the coverage of § 227(b)(1)(B) any "call or message by, or

on behalf, of a caller . . . (2) That is made for a commercial

purpose but does not include the transmission of any unsolicited

advertisement, [or] (3) To any person with whom the caller has an

established business relationship at the time the call is made."

FCC, 57 Fed. Reg. 48,333, 48,335 (Oct. 23, 1992) (codified at 47

C.F.R. § 64.1200(c)).  In 2003, the FCC amended § 64.1200 to

exempt any call that "(iii) Is made for a commercial purpose but

does not include or introduce an unsolicited advertisement or

constitute a telephone solicitation, [or] (iv) Is made to any

person with whom the caller has an established business

relationship at the time the call is made."  FCC, 68 Fed. Reg.

44,144, 44,177 (Jul. 25, 2003) (codified at § 64.1200(a)(2)).

      While the FCC has not further amended § 64.1200(a)(2)

since 2003, it commented on the application of this rule both

before and after it issued the 2003 amendments.  In a 1992 Report

and Order, the Commission explained that "all debt collection

circumstances involve a prior or existing business relationship,"

and concluded that "prerecorded debt collection calls would be

exempt from the prohibitions on such calls to residences as: (1)

calls from a party with whom the consumer has an established

business relationship, and (2) commercial calls which do not

adversely affect privacy rights and which do not transmit an

unsolicited advertisement."  7 FCC Rcd. 8752, 8771, 8773 (Oct.

16, 1992).  In a 1995 Memorandum Opinion and Order, the FCC

clarified its 1992 position, explaining that

            As we stated in the [1992] Report and Order,
            prerecorded debt collection calls are
            adequately covered by exemptions adopted in
            our rules.  Our rules explicitly exempt calls
            made either by a party with whom the
            subscriber has an established business
            relationship or calls that do not transmit an

> unsolicited advertisement and are made for a
> commercial purpose.  Household confuses the
> two exemptions.  We have specifically noted
> that 'prerecorded debt collection calls [are]
> exempt from the prohibitions on [prerecorded]
> calls to residences as . . . commercial calls
> . . . which do not transmit an unsolicited
> advertisement.'  Nevertheless, the Report and
> Order explicitly states that subscribers who
> sever a business relationship are revoking
> consent to any future solicitation.  Because
> the termination of an established business
> relationship is significant only in the
> context of solicitation calls, that act of
> terminating such a relationship would not
> hinder or thwart creditors' attempts to reach
> debtors by telephone.

10 FCC Rcd. 12391, 12400 (Aug. 7, 1995) (ellipses and brackets in

original).  In the 2003 Report and Order revising § 64.1200, the

FCC reiterated that "the act of 'terminating' an established

business relationship will not hinder or thwart creditors'

attempts to reach debtors by telephone, to the extent that debt

collection calls constitute neither telephone solicitations nor

include unsolicited advertisements."  FCC, 68 Fed. Reg. 44,144,

44,158 (Jul. 25, 2003).  And in a 2008 Declaratory Ruling, the

FCC reiterated that "[i]n the 1992 TCPA Order, the Commission

concluded that an express exemption for debt collection calls to

residences was unnecessary as such calls fall within the

exemptions adopted for commercial calls which do not transmit an

unsolicited advertisement and for established business

relationships."  23 FCC Rcd. 559, 561 (Jan. 4, 2008).

　　　AFNI argues that its calls to the 412 number fall under

both the exemption for commercial calls that do "'not include or

introduce an unsolicited advertisement or constitute a telephone

solicitation,'" Def.'s MSJ at 30 (quoting 47 C.F.R. §

64.1200(a)(2)(iii)), and the exemption for "calls made to a party

with whom the caller has an established business relationship."

<u>Id.</u> at 32 (citing § 64.1200(a)(2)(iv)).  Anderson responds that

(1) "the Commission failed to consider or address <u>in any way</u>

unsolicited calls from debt collectors to innocent non-debtors,"

Pl.'s Resp. at 26 (emphasis in original); (2) "the reference to

'unsolicited advertisements' has no application in this context,"

<u>id.</u> at 27; and (3) "[i]f the Commission acts outside of its

authority through an impermissible construction of the TCPA, its

rules are not entitled to deference to the courts."  <u>Id.</u>

　　　It may be true that the FCC's Reports and Memoranda

leave some slight doubt as to whether debt collection calls to

non-debtors are covered by the exemption for established business

relationships.  While the 1992 Report and Order flat-footedly

states that such calls always "involve a prior or existing

business relationship," 7 FCC Rcd. at 8771, the Commission's 1995

Memorandum Opinion and Order seems to suggest that this
relationship may be terminated, that it is of relevance only in
the context of solicitation calls, and that debt collection calls
are principally protected by the exemption for "calls that do not
transmit an unsolicited advertisement and are made for a
commercial purpose." 10 FCC Rcd. at 12400. The 2003 Report and
Order similarly focuses on the fact that debt collection calls
"constitute neither telephone solicitations nor include
unsolicited advertisements," 68 Fed. Reg. at 44,158. The 2008
Declaratory Ruling seems to leave some ambiguity as to which
exemption covers debt collection calls, stating merely that such
calls fall within "the exemptions adopted for commercial calls"
and identifying those exemptions.[4] 23 FCC Rcd. at 561.

Moreover, as Judge Davis observed in Watson v. NCO
Group, Inc., 462 F. Supp. 2d 641, 644 (E.D. Pa. 2006), "the FCC
has not directly addressed the issue of erroneous debt collection
calls." Since it would appear that "an erroneously called non-
debtor has no such existing business relationship" with a debt
collector, it might "follow[] that the purview of the FCC's

---

[4] While the 2008 Declaratory Ruling most naturally
suggests that such calls fall within both exemptions, it could
conceivably mean that such calls merely fall within the
regulatory space spanned by both exemptions.

exemption does not extend to the type of calls made in this case." Id.  On the other hand, in 1992 the FCC stated, without qualification, that "all debt collection circumstances involve a prior or existing business relationship," 7 FCC Rcd. at 8771 (emphasis added), and it has not chosen in the succeeding years to modify this categorical pronouncement.  Thus, other courts have accepted that this statement applies even to calls to non-debtors.  See, e.g., Meadows v. Franklin Collection Serv., Inc., 2010 WL 2605048, at *6 (N.D. Ala. 2010) ("[T]he FCC has determined that all debt collection circumstances are excluded from the TCPA's coverage.  This finding is broad enough to cover a debt collection activity that contacts a non-debtor."); Meadows v. Franklin Collection Serv., Inc., 2011 WL 479997, at *4 (11th Cir. 2011) ("[T]he FCC has determined that all debt-collection circumstances are excluded from the TCPA's coverage, and thus the exemptions apply when a debt collector contacts a non-debtor in an effort to collect a debt.").

We need not decide today whether the exemption under 47 C.F.R. § 64.1200(a)(2)(iv) respecting established business relationships applies to debt collection calls to non-debtors, however, because there is no controversy as to the applicability of § 64.1200(a)(2)(iii) to such calls.  Calls made purely for the

27

purpose of collecting a debt <u>clearly</u> constitute calls "made for a

commercial purpose" that "do[] not include or introduce an

unsolicited advertisement or constitute a telephone

solicitation,"[5] § 64.1200(a)(2)(iii), whether they are made to a

debtor <u>or</u> non-debtor.  Thus, we are aware of no court that has

concluded that § 64.1200(a)(2)(iii) does <u>not</u> apply to debt

collection calls to non-debtors.  <u>See</u>, <u>e.g.</u>, <u>McBride v.</u>

<u>Affiliated Credit Servs., Inc.</u>, 2011 WL 841176, at *3 (D. Or.

2011) ("While I certainly agree that non-debtors lack a prior

business relationship with a debt collector, according to the

Commission debt collection calls are not solicitations or

advertisements and thus fall within a recognized exemption.");

<u>Santino v. NCO Fin. Sys.</u>, 2011 WL 754874, at *6 (W.D.N.Y. 2011)

("[T]he court concludes that the conduct on the part of defendant

---

[5] 47 U.S.C. § 227(a)(4) defines "telephone
solicitation" to mean "the initiation of a telephone call or
message for the purpose of encouraging the purchase or rental of,
or investment in, property, goods, or services, which is
transmitted to any person, but such term does not include a call
or message (A) to any person with that person's prior express
invitation or permission, (B) to any person with whom the caller
has an established business relationship, or (C) by a tax exempt
nonprofit organization."  Section 227(a)(5) defines "unsolicited
advertisement" to mean "any material advertising the commercial
availability or quality of any property, goods, or services which
is transmitted to any person without that person's prior express
invitation or permission, in writing or otherwise."

complained of in this case fits squarely within the exemption provided in 47 C.F.R. § 64.1200(a)(2)(iii)).").

It therefore appears that the exemption codified at 47 C.F.R. § 64.1200(a)(2)(iii) applies to calls to non-debtors made purely for the purpose of debt collection.  While Anderson seems to urge us to consider whether this exemption constitutes "an impermissible construction of the TCPA," Pl.'s Resp. at 27, "[j]udicial review of Federal Communications Commission determinations under the Act is committed directly to the Courts of Appeal," <u>Verizon Maryland, Inc., v. Public Service Comm'n of Maryland</u>, 535 U.S. 635, 651 n.5 (2002) (Souter, J., concurring) (citing 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a)), and hence "this Court may not inquire into the validity of an FCC regulation."  <u>AT&T Commc'ns of California, Inc., v. Pacific Bell</u>, 1998 WL 246652, at *2 (N.D. Cal. 1998).  Anderson's claim under § 227(b)(1)(B) is consequently foreclosed by the exemption at 47 C.F.R. § 64.1200(a)(2)(iii).  Because all of Anderson's claims under the TCPA fail, we will grant AFNI's motion for summary judgment with respect to these claims and deny Anderson's motion for partial summary judgment.

### B.  Anderson's Claims Under The FDCPA

Congress enacted the Fair Debt Collection Practices Act in 1977, <u>Brown v. Card Serv. Ctr.</u>, 464 F.3d 450, 453 (3d Cir. 2006), to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e). Under the FDCPA, "'consumer' means any natural person obligated or allegedly obligated to pay any debt," § 1692a(3), and "'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  § 1692a(5).

The FDCPA imposes limits upon communications made by a debt collector "for the purpose of acquiring location information about the consumer," § 1692b, or with "any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."  § 1692c(b).  The FDCPA also

prohibits a debt collector from engaging "in any conduct the

natural consequence of which is to harass, oppress, or abuse any

person in connection with the collection of a debt," § 1692d, and

proscribes the use of "any false, deceptive, or misleading

representation or means in connection with the collection of any

debt," § 1692e, or the use of "unfair or unconscionable means to

collect or attempt to collect any debt."  § 1692f. But §1692k(c)

provides that

> A debt collector may not be held liable in
> any action brought under this subchapter if
> the debt collector shows by a preponderance
> of evidence that the violation was not
> intentional and resulted from a bona fide
> error notwithstanding the maintenance of
> procedures reasonably adapted to avoid any
> such error.

Anderson alleges claims under §§ 1692b, c(b), d, e, and

f, alleging AFNI engaged in the following, Pl.'s Compl. ¶ 26:

(a)  Disclosing the debt to persons other
     than the debtor;

(b)  Communicating with persons other than
     the debtor on more than one occasion;

(c)  Communicating with persons other than
     the debtor;

(d)  Causing the telephone to ring or
     engaging any person in telephone
     conversation repeatedly or continuously
     with the intent to annoy, abuse, or
     harass any person at the called number;

<pre>
        (e)   Falsely representing the amount,
              character or legal status of the debt;

        (f)   Engaging in conduct the natural
              consequence of which is to harass,
              oppress or abuse any person in
              connection with the collection of a
              debt; and

        (g)   Otherwise using false, deceptive or
              misleading and unfair or unconscionable
              means to collect or attempt to collect a
              debt.
</pre>

AFNI contends that it is entitled to summary judgment

for an array of reasons, but we will focus only on the first of

these -- that Anderson "cannot show that the obligations in

question are consumer debts," Def.'s MSJ at 13 -- because it, by

itself, is sufficient to warrant summary judgment in AFNI's

favor.[6]  It is well-established that "[a] threshold requirement

for application of the FDCPA is that the prohibited practices are

used in an attempt to collect a 'debt.'"  <u>Zimmerman v. HBO</u>

<u>Affiliate Group</u>, 834 F.2d 1163, 1167 (3d Cir. 1987).  <u>See also</u>

_____

        [6] AFNI additionally argues that: (1) "Plaintiff does
not have standing to assert certain causes of action" under §§
1692b, c, e, or f "as she was not the debtor nor were any efforts
made to collect an obligation not owed by her from her," Def.'s
MSJ at 15; (2) "[t]he frequency with which AFNI placed telephone
calls to the Telephone Number does not violate § 1692d(5) and
AFNI is entitled to summary judgment on this claim," <u>id.</u> at 17;
and (3) "[t]he alleged violation in this matter was not
intentional and occurred as a result of a bona fide error."  <u>Id.</u>
at 21.

<u>Pollice v. National Tax Funding, L.P.</u>, 225 F.3d 379, 400 (3d Cir.

2000) (same); <u>Gorbaty v. Portfolio Recovery Assocs.</u>, LLC, 355

Fed. Appx. 580, 581 (3d Cir. 2009) (same).  Moreover, as our

Court of Appeals explained in <u>HBO</u>, <u>id.</u> at 1168-69,

> [T]he type of transaction which may give rise
> to a 'debt' as defined in the FDCPA, is the
> same type of transaction as is dealt with in
> all other subchapters of the Consumer Credit
> Protection Act, <u>i.e.</u>, one involving the offer
> or extension of credit to a consumer.
> Specifically it is a transaction in which a
> consumer is offered or extended the right to
> acquire 'money, property, insurance,
> or services' which are 'primarily for household
> purposes' and to defer payment.

Consequently, as Judge Weiner has put it, "[b]y its terms . . .

the FDCPA applies to only consumer debt for personal, family or

household purposes and not to commercial debt."  <u>Martin v. Berke

& Spielfogel</u>, 1995 WL 214453, at *4 (E.D. Pa. 1995).

    AFNI argues that "Plaintiff has not produced a single

iota of tangible evidence concerning the underlying purpose of

the debt," and that therefore "Anderson has produced no evidence

to prove that the delinquent account is a debt as defined by the

FDCPA."  Def.'s MSJ at 14.  Anderson responds that "[t]he debts

are all being collected from an individual person," that "the

addresses associated with the debts on AFNI's own records are

residential addresses," and that "Defendant admits that it

33

treated the debts at issue here assuming they were consumer debts and subject to the FDCPA." Pl.'s Resp. at 15. Consequently, Anderson urges that "[s]ince all inferences from this record must be made in Plaintiff's favor, as the nonmoving party, there exists a genuine issue of fact regarding the consumer nature of the debts at issue in this case." Id. at 16.

While it is true that we "must draw all reasonable inferences in favor of the nonmoving party" in ruling on a motion for summary judgment, Reeves, 530 U.S. at 150, it is also true that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Anderson asks us to infer that the debts here were incurred "primarily for personal, family, or household purposes," § 1692a(5), solely because (1) Sampson is an individual, (2) the addresses associated with the debts at issue are "residential," and (3) AFNI treated these debts as if they were consumer debts. This we cannot do.

In the first place, individuals may -- and often do -- carry on commercial activities from residential settings. See, e.g., Lang v. Winston & Winston, P.C., 2001 WL 641122, at *5 n.1 (N.D. Ill. 2001) (distinguishing broader class of "individuals

34

who made purchases in their own name and used a residential
address" from narrower group of individuals who "made the
purchase primarily for personal, family or household purposes").
AFNI may have in an abundance of caution treated Sampson's
obligations as consumer debts to protect itself from FDCPA
liability.  In any case, a debt collector's treatment of an
obligation is irrelevant to an inquiry regarding the nature of
that obligation itself.  <u>See</u>, <u>e.g.</u>, <u>Slenk v. Transworld Systems,
Inc.</u>, 236 F.3d 1072, 1076 (9th Cir. 2001) ("We, too, refuse to
ignore Congress's intent by defining a consumer debt in
accordance with the actions of the debt collector, rather than
the true nature of the debt.")  No reasonable jury could find,
based on the evidence Anderson has adduced, that the obligations
at issue here were consumer debts.  A residential address and an
individual debtor -- on inferences alone -- do not a consumer
debt make, even applying the grace we are obliged to extend.  In
short, Anderson's proffers regarding the nature of Sampson's debt
amount to nothing more than conjecture or speculation.

    AFNI has shown that Anderson "has failed to establish
one or more essential elements of [her] case" under the FDCPA,
<u>Connection Training Servs.</u>, 358 Fed. Appx. at 318, and Anderson
has not "come forward with specific facts indicating a genuine

issue for trial." <u>Id.</u>  We will consequently grant AFNI's motion

for summary judgment as to Anderson's FDCPA claims.

C.   <u>**Anderson's Claim Under Pennsylvania Law**</u>

Our jurisdiction over Anderson's Pennsylvania state law

claims rests on our supplemental jurisdiction, which we may

exercise only "as long as there is a federal claim which gives

the court jurisdiction." <u>Ambromovage v. United Mine Workers of

America</u>, 726 F.2d 972, 989 n.48 (3d Cir. 1984).  Having granted

AFNI's motion for summary judgment with respect to all of

Anderson's federal claims, we decline to exercise our

supplemental jurisdiction over her remaining state claim.  As a

result, we will dismiss the third claim of her complaint without

prejudice pursuant to 28 U.S.C. § 1367(c)(3).


BY THE COURT:


__\s\Stewart Dalzell